IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-536-FL

| | | |
|---|---|---|
| BECTON, DICKINSON AND COMPANY, | ) ) ) | |
| Plaintiff and Counter Defendant, | ) ) | |
| v. | ) ) | O R D E R |
| BIOMEDOMICS, INC., | ) ) | |
| Defendant and Counter Claimant. | ) | |

This matter is before the court on Plaintiff Becton, Dickinson and Company's ("BD")

motion to compel, [DE-36]; Defendant BioMedomics, Inc.'s ("BioMedomics") motion to compel,

[DE-40]; and BioMedomics's motion to seal, [DE-47]. BD responded to BioMedomics's motion,

[DE-44], and BioMedomics responded to BD's motion, [DE-45]. For the reasons discussed below,

BD's motion to compel is allowed in part and denied in part, BioMedomics's motion to compel is

allowed in part and denied in part, and BioMedomics's motion to seal is allowed.

## I. BACKGROUND

This case arises from BD's purchase of Covid-19 serology[1] tests from BioMedomics. [DE-

37] at 1. BD alleges the parties entered into a term sheet whereby BioMedomics was to

manufacture and sell to BD multiple units of COVID-19 IgM/IgG assay, a serology test

represented by BioMedomics to detect the presence of antibodies when the body is responding to

an infection. Compl. [DE-1] ¶¶ 8–9. BD asserts claims of breach of contract and unjust

enrichment, seeking the recovery of more than six million dollars it paid to BioMedomics for tests

---

[1] Serology is the branch of science concerned with serum, especially with specific immune or lytic serums; to measure either antigens or antibodies in sera. Stedman's Medical Dictionary 812040 (2014).

that were recalled and could not be sold after they were not approved by the Food and Drug Administration ("FDA"). *Id.* ¶¶ 27–35. BioMedomics has counterclaimed for more than sixteen million dollars for breach of an agreement with BD to distribute the tests outside of the United States. [DE-37] at 1; Ans. & Countercl. [DE-14] ¶¶ 27–35.[2] Because the agreement was not memorialized in writing, the counterclaim is premised on the theory that the tests were specially manufactured for BD. [DE-37] at 1–2.

On February 4, 2021, BD served BioMedomics with its First Sets of Interrogatories, Requests for Admissions, and Requests for Production of Documents ("RFP"). [DE-36-2 through -36-4]. In its motion to compel, BD contends that BioMedomics has not adequately responded to the following discovery requests:

> Interrogatory 2: Identify all Customers who purchased the Product, and for each Customer identify the volume of units purchased, the date(s) of each purchase, and the price per unit (in dollars) of the purchase.
>
> Interrogatory 3: Identify all Potential Customers with whom BioMedomics entered into discussions regarding the purchase of the Product, regardless of whether or not they purchased the Product.
>
> Interrogatory 9: Identify any agreements between BioMedomics and any Person concerning the development, manufacture, production, testing, shipping, distribution or sale of the Product.
>
> Interrogatory 10: Identify all steps you have taken to mitigate the damages alleged in the Counterclaims.
>
> Interrogatory 17: Identify how many units of the Product were purchased by Gilmedica S.A., when they were purchased, and the price per unit (in dollars) for each purchase.
>
> Request for Admission 8: Admit that Customers other than BD have purchased the Product.
>
> RFP 4: All Communications with Customers or Potential Customers of BioMedomics referring to sales or potential sales of the Product.

---

[2] The counterclaim for breach of contract was dismissed without prejudice on June 15, 2021. [DE-43]. BioMedomics filed a motion to amend its answer and counterclaim on July 6, 2021, and that motion is currently pending. [DE-49].

RFP 5: Documents sufficient to show all revenue generated by BioMedomics related to the Product.

RFP 6: All monthly, quarterly, and annual audited financial statements for BioMedomics including income statements, balance sheets, and cash flow statements, whether audited or unaudited, from January 1, 2020 until the Present.

[DE-36-2] at 7–9; [DE-36-3] at 5; [DE-36-4] at 6–7. In the requests, BD defined "Product" as "BioMedomics's COVID-19 Igm/IgG assay," "Customer" as "any Person who purchased the Product," and "Potential Customer" as "any Person who entered into discussions with BioMedomics regarding the purchase of the Product." [DE-36-2] at 2–3; [DE-36-3] at 2–3; [DE-36-4] at 2–3.

BioMedomics objects to those requests on the grounds that BD's definition of "Product" is vague and should be limited to the serology tests that were produced for BD and that BD's definition of "Potential Customers" is irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case. [DE-45] at 3–7. BioMedomics further contends that the financial records requested are irrelevant, unduly burdensome, and not proportional to the needs of the case and that it has provided complete responses to Interrogatories 10 and 17 and Request for Admission 8. *Id.* at 7–10.

In BioMedomics's motion to compel, it contends that BD had inadequately responded to the following requests:

Interrogatory 2: Identify every Person you know or believe to have knowledge of any fact or matter alleged in the Complaint, the Answer and Counterclaim, and Reply.

Interrogatory 3: For each Person identified above in response to Interrogatory 2, provide a summary of the facts of which such Person has knowledge.

Interrogatory 4: Identify all Persons who acted on behalf of or who were engaged by BD regarding manufacture, production, testing, acquisition, shipping,

distribution, purchase, or sale of Import Product or Export Product, together with each person's scope of work.

Interrogatory 5: For each Person identified above in response to Interrogatory 4, provide a summary of the facts of which such Person has knowledge.

Interrogatory 7: Identify all your conversations from January 1, 2020 to present with BioMedomics regarding manufacture, production, testing, acquisition, shipping, distribution, purchase, or sale of Import Product or Export Product.

Interrogatory 8: With regard to the admitted communications referenced identified in paragraphs 12, 13, and 19 of BioMedomics' Answer and Counterclaim and the corresponding paragraphs of BD's Reply, state all representations made by BD to BioMedomics regarding manufacture, production, testing, acquisition, shipping, distribution, purchase, or sale of Export Product.

Interrogatory 9: With regard to the conversations identified in paragraphs 11, 16, 32, 35, 38, and 48 of the "Preliminary Statement" contained in BD's Reply, state all representations made by BD to BioMedomics regarding manufacture, production, testing, acquisition, shipping, distribution, purchase, or sale of Export Product.

Interrogatory 10: Identify all your internal conversations from January 1, 2020 to present regarding manufacture, production, testing, acquisition, shipping, distribution, purchase, or sale of Export Product.

Interrogatory 11: Identify all your internal conversations from January 1, 2020 to present regarding manufacture, production, testing, acquisition, shipping, distribution, purchase, or sale of Import Product.

Interrogatory 12: Identify all conversations between you and the FDA from January 1, 2020 to present regarding the Import Product.

Interrogatory 16: Identify all facts, communications, and documents which you contend support the Affirmative Defenses set out in your Reply.

RFP 11:[3] Produce all documents from January 1, 2020 to present forecasting BD's anticipated demand for Import Product or Export Product (including, without limitation, any financial forecasts, negotiations for sale of Import Product or Export Product to third parties, etc.).

_____

[3] This request was mislabeled as RFP 9 in BioMedomics's discovery requests to BD because there are two instances of RFP 4 and 5, [DE-40-2] at 9, but it was correctly labelled as RFP 11 in BD's responses, [DE-40-4] at 10, and in BioMedomics's motion, [DE-41] at 10. The court will refer to this request as RFP 11.

4

[DE-40-2] at 5–10. BioMedomics contends that BD's general objections to its discovery requests make it impossible for BioMedomics to determine what is being withheld and that BD's interrogatory responses are deficient in that BD produced a mass of records without specifying how they are responsive. [DE-41] at 4–7. BD objects to the requests on the grounds that they are overbroad and unduly burdensome. [DE-44] at 6–8. BD further states that Interrogatory 16 is premature and that it has now produced documents responsive to RFP 11. *Id.* at 8.

## II. DISCUSSION

Rule 26 provides the general rule regarding the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at \*3 (M.D.N.C. June 13, 2007); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory or to produce or make available for inspection requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated

5

as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). However, the Federal Rules also provide that

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). "Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Finally, the party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection*, 270 F.R.D. at 240 (citation omitted).

**A.    BD's Motion to Compel**

BD contends that BioMedomics has failed to produce requested information regarding Customers, Potential Customers, BioMedomics's agreements concerning the Product, mitigation of damages, Product purchased by Gilmedica S.A., revenue generated by BioMedomics related to the Product, and financial statements. [DE-37] at 3–4. BioMedomics takes issue with BD's definitions of Product, Customer, and Potential Customer as propounded in its discovery requests; contends that the information sought is not proportional to the needs of the case and presents an undue burden; and states that an Attorneys' Eyes Only provision in the consent protective order may be appropriate.

6

### 1. The Definition of Product, Customer, and Potential Customer

First, BioMedomics contends that BD's definition of Product is vague. [DE-45] at 4. In its discovery requests, BD defined Product as "BioMedomics's COVID-19 Igm/IgG assay." [DE-36-2] at 2–3; [DE-36-3] at 2–3; [DE-36-4] at 2–3. BioMedomics states "that it is unclear whether [BD's definition of Product] refers to serology assays sold to BD, sold to other customers, or all serology assays ever sold by BioMedomics." [DE-45] at 4. However, BD's definition of Product resolves those questions on its face. The definition as propounded does not distinguish between serology assays sold to BD and to other customers and would therefore appear to include all of BioMedomics's Covid-19 Igm/IgG assays without regard to whom they were produced or sold. Additionally, the definition is narrower than "all serology assays ever sold by BioMedomics," as it is limited to BioMedomics's Covid-19 Igm/IgG serology assays. The issue with the definition does not appear to be vagueness, but rather overbreadth, and BioMedomics in fact contends that the definition of Product *should* be limited to the assays produced for BD in order to appropriately narrow the scope of discovery.

Relatedly, BioMedomics also contends that the definitions of Customer and Potential Customer are overbroad. BD defines "Customer" as "any Person who purchased the Product" and "Potential Customer" as "any Person who entered into discussions with BioMedomics regarding the purchase of the Product." [DE-36-2] at 2–3; [DE-36-3] at 2–3; [DE-36-4] at 2–3. BioMedomics argues that the definitions are overbroad because information regarding Covid serology assays produced for customers other than BD is irrelevant. [DE-45] at 5–7.

In summary, the dispute regarding BD's definitions centers on whether information regarding Covid-19 serology assays produced for customers other than BD is relevant and proportional to the needs of the case. BD contends that BioMedomics's sale of Covid-19 assays

to other customers is relevant to BioMedomics's mitigation of damages and BioMedomics's counterclaim, which is premised on the theory that the Covid-19 serology assay at issue in this case was specially manufactured for BD. [DE-37] at 6–8. BD argues that it is entitled to know whether and how the assay was marketed to other customers, for such information may provide a defense against BioMedomics's counterclaim. *Id.*

BioMedomics contends that the motion should be denied without prejudice as it relates to the counterclaim because on June 15, 2021, the court dismissed the breach of contract counterclaim without prejudice. [DE-45] at 4–5; [DE-43]. The court allowed BioMedomics a period of time in which to file a motion for leave to amend the counterclaim to add more alleged facts regarding whether the assays were specially manufactured. [DE-43] at 13–14. BioMedomics filed a motion to amend its answer and counterclaim on July 6, 2021. [DE-49]. In it, BioMedomics alleges that the Product was "specially designed to interface with BD's unique inventory control system" and that it "cannot sell serology tests to a customer bearing another company's reference number." [DE-49-2] at 12. BioMedomics's motion to amend its answer and counterclaim is currently pending. [DE-49].

"During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Mainstreet Collection, Inc.*, 270 F.R.D. at 240 (quoting *Oppenheimer Fund., Inc.*, 437 U.S. at 351). Certain discovery regarding BioMedomics's Covid-19 assays produced for customers other than BD could reasonably lead to information about whether the Covid-19 assays produced for BD were specially manufactured. For example, BioMedomics stated in its response to Interrogatory 10 that it labelled the assays produced for BD with a barcode "identifying the Product as belonging to BD and that would enable BD to track the product through its unique system."

[DE-36-5] at 10.  In order to determine whether the barcode or any other attribute makes the assays at issue in this case specially manufactured, and in order to determine whether they could be easily modified and marketed to other customers, it is logical that BD would need to compare the Covid-19 assays produced for it to Covid-19 assays produced for other customers.  Accordingly, information about assays produced for other customers is relevant to a defense against the counterclaim, which may or may not be an issue in the case depending upon the court's ruling on BioMedomics's currently pending motion to amend.  In the event the court denies the motion to amend, then information regarding whether the assays were specially manufactured would not be relevant, and the motion to compel responses to those requests should be denied.  However, if the court allows the motion to amend, then the information would be relevant.  Nevertheless, some of BD's discovery requests appear to be overbroad, as discussed below.  In sum, BioMedomics may wait to respond to the requests addressed in this order until the court has issued its ruling on the pending motion to amend; if the motion is allowed, then BioMedomics is ordered to respond as discussed below.

First, Interrogatory 2 asks BioMedomics to "Identify all Customers who purchased the Product, and for each Customer identify the volume of units purchased, the date(s) of each purchase, and the price per unit (in dollars) of the purchase."  BioMedomics states that it has fully responded to Interrogatory 2 by providing the list filed as a proposed sealed document.  [DE-46].  "The court must take [a party's] word that it has produced all responsive discoverable documents if [the party] says that it has."  *Georgia-Pac. Corp. v. Von Drehle Corp.*, No. 5:05-CV-478-BO, 2007 WL 9637134, at *1–2 (E.D.N.C. Aug. 17, 2007).  The list contains customers other than BD as well as the quantities, dates, and prices of their purchases; accordingly, it appears to be responsive to Interrogatory 2 and in compliance with BD's definitions of Product and Customer.

9

Next, Interrogatory 3 asks BioMedomics to "identify all Potential Customers with whom BioMedomics entered into discussions regarding the purchase of the Product, regardless of whether or not they purchased the Product" and RFP 4 seeks "all Communications with Customers or Potential Customers of BioMedomics referring to sales or potential sales of the Product." [DE-36-5] at 2–3. BioMedomics contends that the requests seek irrelevant information because while BD states that it seeks information about why other entities declined to purchase the Covid-19 assays, the requests cover all communications and Potential Customers, including those who declined to purchase the assays for reasons unknown to BioMedomics. Accordingly, to more appropriately tailor the requests to the needs of the case, Interrogatory 3 should be limited to Potential Customers for whom BioMedomics knows why they declined to purchase the Product, and RFP 4 is limited to communications showing how the Product was marketed to Potential Customers and communications showing why the Potential Customers declined to purchase the Product. That information would appear to be relevant to the issue of whether the Covid-19 assay produced for BD was specially manufactured, and a narrowing of the requests makes them more proportional to the needs of the case and less burdensome. If the court allows the pending motion to amend, BioMedomics should respond to the narrowed requests within fourteen days of the court's ruling.

Interrogatory 9 asks BioMedomics to "[i]dentify any agreements between BioMedomics and any Person concerning the development, manufacture, production, testing, shipping, distribution or sale of the Product." *Id.* at 8–9. That request seeks relevant information because a comparison of the development, manufacture, production, testing, shipping, distribution, or sale of Covid-19 assays produced for customers other than BD and the Covid-19 assays intended for sale to BD would indicate whether the assays were specially manufactured for BD. Accordingly,

if the court allows the pending motion to amend, Interrogatory 9 should be answered in full within fourteen days of the court's ruling.

Interrogatory 10 asks BioMedomics to "[i]dentify all steps you have taken to mitigate the damages alleged in the Counterclaims." *Id.* at 9–10. BioMedomics states that it "has already provided sworn testimony to BD that none of the Product that it ordered has been sold, and given reasons why it was not able to sell the Product." [DE-45] at 8. However, the request seeks steps taken to mitigate the damages, not simply a statement that attempts to mitigate were unsuccessful; accordingly, BioMedomics should respond with the steps it took to mitigate its damages, or affirmatively state that it took no steps to mitigate its damages because it believed any attempt would be futile within fourteen days of the court's ruling on the motion to amend, if it allows the motion.

Request for Admission 8 asks BioMedomics to "admit that Customers other than BD have purchased the Product." [DE-36-6] at 4. The proposed sealed document at [DE-46], which lists the entities who have purchased the Product, appears to answer that request for admission in the affirmative. Nonetheless, in an effort to clarify the responses, BioMedomics should answer Request for Admission 8, with the definition of Product being "BioMedomics's COVID-19 Igm/IgG assay," within fourteen days of the court's ruling on the motion to amend, if it allows the motion.

In summary, if the court allows the pending motion to amend, the proposed sealed document at [DE-46] answers Interrogatory 2; Interrogatory 3 is limited to Potential Customers for whom BioMedomics knows why they declined to purchase its Covid-19 assay; RFP 4 is limited to communications showing how the Product was marketed to Potential Customers and communications showing why the Potential Customers declined to purchase Product;

11

Interrogatories 9 and 10 should be answered in full as they seek relevant information; and Request for Admission 8 should be answered in full, all within fourteen days of the court's ruling. If the motion to amend is denied, then the information sought regarding the counterclaims would be irrelevant, and BioMedomics would not be required to respond to the requests as described.

**2.     BioMedomics's Financial Records**

RFP 5 seeks documents showing all revenue generated by BioMedomics related to the Product. [DE-36-7] at 6–7. BioMedomics contends that it has fully responded to RFP 5 by producing the proposed sealed document at [DE-46]. [DE-45] at 8, 17–20. Again, the court takes BioMedomics's word that the proposed sealed document shows all revenue generated by BioMedomics for the Product. *See Georgia-Pac. Corp.*, 2007 WL 9637134, at *1–2.

RFP 6 seeks BioMedomics's financial statements from January 1, 2020 to the present. [DE-36-7] at 7–8. BioMedomics contends that the request seeks irrelevant information because a party's motives for an alleged breach of contract is not relevant. [DE-45] at 9 (citing *Coker's Mobile Home Plaza, Inc. v. ITT Com. Fin. Corp.*, 900 F.2d 250 (4th Cir. 1990)). BD contends that the requests are not an undue burden and are proportional to the needs of the case because a large amount of money is at stake, particularly in BioMedomics's counterclaim. [DE-37] at 8–9. However, the court agrees that BioMedomics's financial statements are not relevant except to the extent that they show damages or mitigation of damages regarding the Covid-19 assay. Accordingly, BioMedomics should respond to RFP 6 with its financial records, including its income statements, balance sheets, and cash flow statements from January 1, 2020 to the present regarding its Covid-19 serology assay, and it may omit information unrelated to the Product.

### 3. Confidentiality

BD contends that BioMedomics agreed during meet and confer efforts that an Attorneys' Eyes Only provision would resolve its confidentiality concerns, and BD indicates in the instant motion that it would be willing to amend the Consent Protective Order to allow for an Attorneys' Eyes Only designation. [DE-37] at 9–10. The parties may move to amend the Consent Protective Order to include an Attorneys' Eyes Only provision if they wish to do so.

## B. BioMedomics's Motion to Compel

### 1. General Objections

BioMedomics contends that BD's general objections to the discovery requests are boilerplate and invalid. [DE-41] at 4–5 (citing *Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503 (E.D.N.C. 2012) ("Silicon Knights's responses to Epic Games's interrogatories and requests for production comprise nothing but a laundry list of boilerplate objections. Silicon Knights has failed to articulate any specific objection to any particular interrogatory or request for production, and therefore has waived any legitimate objection it otherwise could have raised.")). BD responds that its general objections do not waive the specific objections BD has made. [DE-44] at 2–4. The court agrees that boilerplate, general objections are improper, and it will consider only the objections BD makes to specific discovery requests. *See Mainstreet Collection, Inc.*, 270 F.R.D. at 241 ("The party resisting discovery . . . must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law.").

### 2. Rule 33(d)

BioMedomics contends that BD improperly relied on Fed. R. Civ. P. 33(d) in many of its interrogatory responses. [DE-41] at 6–7. BD responds that the interrogatories are overly broad

and burdensome and that requests for production of documents would be a more appropriate device

by which to obtain the information sought. [DE-44] at 4–5.

> Fed. R. Civ. P. 33(d) provides:
>
> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

BD responded to Interrogatories 2 and 4–9 by stating, "Pursuant to Rule 33(d) of the Federal Rules

of Civil Procedure, BD refers BioMedomics to its non-privileged, responsive documents that will

be produced in discovery." [DE-40-3] at 4–10. BioMedomics contends that the response does not

"specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party

to locate and identify them." Fed. R. Civ. P. 33(d)(1).

The court agrees that pointing to unspecified documents that will be produced in the future

is insufficient to meet the requirements of Rule 33(d)(1). *See Patten v. Hall*, No. 5:15-CT-3118-

FL, 2017 WL 6062258, at *3 (E.D.N.C. Dec. 7, 2017) (defendants may not simply point to

documents produced and expect plaintiffs to dig out the interrogatory answers); *Brown v. Blue

Cross & Blue Shield of Alabama*, No. 3:13-CV-121-GCM, 2014 WL 3519100, at *3 (W.D.N.C.

July 15, 2014) ("The party seeking to produce records in lieu of answering interrogatories must

satisfy several factors to justify the use of Rule 33(d)" and "must adequately and precisely specify,

for each interrogatory, the actual documents where the requested information will be found")

(citations omitted); *Surrett v. Consol. Metco, Inc.*, No. 1:11CV106, 2012 WL 88837, at *1

14

(W.D.N.C. Jan. 11, 2012) (finding that the defendants "failed to satisfy the requirements of the Rule 33(d) by generally referring to all the documents they produced in response to Plaintiff's First Request for Production of Documents"). Accordingly, BD's reliance on Rule 33(d) is insufficient to meet its burden of showing why discovery should be denied. BD's objections that the interrogatories are overbroad and unduly burdensome remain, and those objections are discussed below as they pertain to specific discovery requests. *See* [DE-44] at 6–8.

### 3. Interrogatories 2–5 and BD's Exhibit A

Interrogatories 2 and 3 ask BD to identify people it knows to have knowledge of any fact or matter alleged in the pleadings and to provide a summary of the facts for which they have knowledge. [DE-40-3] at 3–4. Interrogatories 4 and 5 ask BD to identify people who were engaged in the manufacture, production, testing, acquisition, shipping, distribution, purchase, or sale of Import Product or Export Product, the scope of their work, and a summary of the facts of which they have knowledge. *Id.* at 4–5. In a supplemental response to Interrogatories 2–5, BD has provided Exhibit A in which it lists fifteen individuals, their companies, their titles, and a short summary of their involvement in the facts of the case. [DE-40-3] at 18–21.

BioMedomics states that the supplemental response was provided one day prior to the deadline to file the instant motion to compel, so BioMedomics has had "no practical opportunity to assess its propriety." [DE-41] at 7. BioMedomics believes the list is still incomplete because it omits a person who BioMedomics knows has knowledge of the case. *Id.* at 8.

Relevance is broadly defined as "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Mainstreet Collection, Inc.*, 270 F.R.D. at 240. The interrogatories seek relevant information because they are limited to people who "have knowledge of any fact or matter alleged in the Complaint, the Answer and

15

Counterclaim, and Reply." [DE-40-3] at 3–4. Accordingly, they seek the identities of people who have knowledge of any issue that is or may be in the case.

It is BD's burden to show why discovery should be denied, and it has not demonstrated that fully answering the interrogatories would pose an undue burden. BD states in a footnote of its response that "[g]iven the size of this matter and the number of employees at BD, it is not reasonable to expect BD to identify every employee who may have had limited or tangential involvement in the matters at issue." [DE-44] at 6 n.7. However, BD has identified only twenty-six people in a three and a half page table, [DE-40-3] at 18–21, and it argues in its own motion to compel that given the amount at stake in this case, it is not an undue burden for BioMedomics to undertake review of a large volume of documents, [DE-37] at 8–9. BD has not made a particularized showing of why discovery should be denied, i.e., it has not estimated a number of employees who may have tangential knowledge of the matters at issue and explained why it would be an undue burden for BD to list their names, titles, and a short description of the extent of their knowledge, as it did in Exhibit A. Accordingly, BD should fully respond to Interrogatories 2–5.

### 4. Interrogatories 7–12 and Oral Communications

BD argues that the requests for "conversations" in Interrogatories 7–12 are overbroad and unduly burdensome because it cannot practically identify all the conversations that hundreds of employees had over the relevant time period. [DE-44] at 7. "Conversation" is not defined in BioMedomics's discovery requests, [DE-40-2] at 1–4, and both parties appear to have interpreted the word as it is commonly defined; BioMedomics states that a conversation is an "oral exchange of sentiments, observations, opinions, or ideas," [DE-41] at 8–9, and BD characterizes it as "each and every interaction of BD employees even vaguely related to this case," [DE-44] at 7. BD states that answering the interrogatories is an "impossible task, which would in essence require BD to

16

create a transcript of each of its employee's interactions related to this case for nearly a year and a half," and it states that it has instead "agreed to provide BioMedomics with documents evidencing such communications." [DE-44] at 7. BD further contends that depositions would be a more appropriate discovery device by which to elicit information about oral conversations. *Id.* at 7–8. BioMedomics recognizes that the passage of time would impair BD's ability to recall every conversation with accuracy, but BioMedomics argues that the Rules of Civil Procedure require BD to respond to the interrogatories with as much accuracy as it can. [DE-41] at 9.

Fed. R. Civ. P. 26(g)(1) requires attorneys to sign discovery responses indicating that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the response was consistent with the Rules. BD argues, in effect, that listing all of the oral communications of its employees regarding this matter exceeds a reasonable inquiry. However, BioMedomics indicates its understanding that memories fade. [DE-41] at 9. In *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-00282-F, 2013 WL 5705601, at \*4 (E.D.N.C. Oct. 18, 2013), the defendant served a similar interrogatory to the ones at issue here, seeking information regarding communications relating to the claims asserted. The plaintiff objected that the interrogatory was unduly burdensome because numerous communications occurred and "it cannot identify every such conversation or the date thereof." *Id.* The court held that the interrogatory was "not unduly burdensome or oppressive" because:

> [P]arties are under a duty to complete a reasonable investigation when presented with the opposing party's interrogatories and document requests. Discovery requests served on a company solicits information known to the company, not solely information known by the president, CEO, or other person directed to respond to the discovery requests. Accordingly, a reasonable investigation by a company would include an inquiry of a company's employees for relevant information. A company need not question all employees, but must question those that would reasonably have relevant information.

17

*Id.* (quoting *3M Innovative Properties Co. v. Tomar Elec.*, No. 05–756 (MJD/AJB), 2006 WL 2670038, at *6 (D. Minn. Sept. 18, 2006)); *see also Kotsias v. CMC II, LLC*, No. 1:15 CV 242, 2016 WL 6841080, at *4 (W.D.N.C. Nov. 21, 2016) (ordering the defendant "to examine the records to see if there are documents related to telephone calls between the Plaintiff and Defendant or any employee of Defendant or any company under the Consulate Health Care umbrella for the dates of February 13, 2014, and February 19, 2014 concerning conversations between the Plaintiff and Susan Musgrove."). BD is obligated to make a reasonable inquiry, question employees who may have relevant information, and answer the discovery requests to the best of its ability. The interrogatories seek relevant information, and they are not unduly burdensome. *See Smithfield Bus. Park, LLC*, 2013 WL 5705601, at *4.

### 5. Interrogatory 16 and Support for BD's Affirmative Defenses

Interrogatory 16 asks BD to "[i]dentify all facts, communications, and documents which you contend support the Affirmative Defenses set out in your Reply." [DE-40-3] at 15. BD contends that the request is premature, for it is continuing to ascertain facts in defense against the counterclaims. [DE-44] at 8. BioMedomics contends that the response should be supplemented. [DE-41] at 10. Fed. R. Civ. P. 26(e) provides that a party who has responded to an interrogatory "must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." BD has indicated that it is aware its response is incomplete at present, and it is reminded of its obligations to supplement its response as it becomes aware of facts, communications, and documents which it contends support its affirmative defenses. *See* Fed. R. Civ. P. 26(e).

### 6.    RFP 11 and Financial Documents

RFP 11 asks BD to "[p]roduce all documents from January 1, 2020 to present forecasting BD's anticipated demand for Import Product or Export Product (including, without limitation, any financial forecasts, negotiations for sale of Import Product or Export Product to third parties, etc.)." [DE-40-4] at 10. BioMedomics states that it has not had the opportunity to review BD's document production to determine if BD has responded to this request. [DE-41] at 10. BD states it has produced the documents. [DE-44] at 8 n.8. The court takes BD's word that it has responded to RFP 11, *see Georgia-Pac. Corp.*, 2007 WL 9637134, at *1–2, and it denies BioMedomics's motion to compel a response to that discovery request.

In summary, BioMedomics's generalized objections are inadequate, and the court considers only its specific objections; BioMedomics's reliance on Rule 33(d) is insufficient to the extent that it points to unspecified documents that will be produced at a later date; BioMedomics is directed to make a reasonable inquiry and respond to the best of its ability to Interrogatories 2– 5 and 7–12; and it is reminded of its duty under Rule 26(e) to supplement its response to Interrogatory 16 as it learns additional information.

### C.    Expenses and Fees

Both parties seek expenses and attorney's fees incurred in making these motions. [DE-36] at 2, [DE-40] at 3. However, neither party briefed the issue in its memoranda. Accordingly, the court declines to address it and expresses no opinion as to whether an award of fees is warranted in this case. If the parties wish to pursue their requests for attorney's fees, they must file supplemental briefs on the issue within seven (7) days, and the opposing party shall have fourteen (14) days to respond. *See Prime Commc'ns, L.P. v. Ragsdale Liggett, PLLC*, No. 5:19-CV-238-FL, 2020 WL 1472322, at *4 (E.D.N.C. Mar. 19, 2020).

**D.     Motion to Seal**

BioMedomics filed a motion to seal Exhibit A to their objections and first amended responses to BD's interrogatories. [DE-47]. "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). The Fourth Circuit has directed that before sealing publicly filed documents the court must first determine if the source of the public's right to access the documents is derived from the common law or the First Amendment. *Stone v. Univ. of Md.*, 855 F.2d 178, 180 (4th Cir. 1988). The fact that the documents sought to be sealed are subject to a protective order by the court does not relieve the parties or the court from the obligation to comply with the Fourth Circuit's sealing regimen. *See Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652, 679–80 (E.D.N.C. 2003); *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys.*, No.1:05-CV-955, 2011 WL 2413404, at *5 (M.D.N.C. Jun. 10, 2011) (citations omitted). "[T]he common law presumption in favor of access attaches to all 'judicial records and documents,' [while] the First Amendment guarantee of access has been extended only to particular judicial records and documents[,]" such as those filed in connection with a motion for summary judgment. *Stone*, 855 F.2d at 180 (quoting *Nixon*, 435 U.S. at 597 & citing *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). To determine whether the public's right of access is derived from the First Amendment or common law, courts use a two-pronged "experience and logic" test. *360 Mortg. Grp., LLC v. Stonegate Mortg. Corp.*, No. 5:14-CV-310-F, 2016 WL 3030166, at *6 (E.D.N.C. May 25, 2016). "Under the experience prong, the court considers whether the proceeding before the court is the type that traditionally is open to the public. Under the logic prong, the court determines whether the proceeding benefits from public access." *Id.* (citations omitted).

Here, the document sought to be sealed is an exhibit to a response in opposition to a motion to compel, and thus the document plays a role in the adjudication process. *See In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) ("[D]ocuments filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights.") (citations omitted); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("[T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."). Furthermore, the document is not subject to the First Amendment right of access because it was filed in connection with an opposition to a motion to compel, which is not the type of proceeding that traditionally is open to the public, unlike a proceeding which serves as a substitute for trial, such as a motion for summary judgment.

The presumption of access under the common law is not absolute, and its scope is a matter left to the discretion of the district court. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004), cert. denied, 544 U.S. 949 (2005). The presumption "'can be rebutted if countervailing interests heavily outweigh the public interests in access,' and '[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.'" *Id.* (quoting *Rushford*, 846 F.2d at 253). "Some of the factors to be weighed in the common law balancing test 'include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records.'" *Id.* (quoting *In re Knight Publ. Co.*, 743 F.2d 231, 235 (4th Cir. 1984)). Finally, prior to sealing a judicial record the court must (1) give the public notice of the request to seal and a reasonable opportunity to challenge it; (2)

21

consider less drastic alternatives to sealing; and (3) "state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing in order to provide an adequate record for review." *In re Knight Pub. Co.*, 743 F.2d at 235 (citation omitted).

Here, the document consists of responses to discovery requests. Although not dispositive, this factor does speak to the purported nature of the documents, which contain sensitive business information not available to the general public, including the identities of customers. *See Alscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, No. 5:13-CV-590-BO, 2013 WL 4586517, at *2 (E.D.N.C. Aug. 28, 2013) (sealing documents containing "confidential commercial information and trade secrets[,] . . . confidential financial information[,] and technical information . . . as well as confidential communications with plaintiff's customers and communications between the parties attempting to resolve this dispute."). *Cf. McRae v. Harrison*, No. 5:17-CV-23-H, 2018 WL 4345278, at *5 (E.D.N.C. Aug. 16, 2018), *adopted by* 2018 WL 4339362 (E.D.N.C. Sept. 11, 2018) (denying a motion to seal a response in opposition to a motion to dismiss because the party did not specify which portions of the response contain confidential information). Based on this showing, the court finds that the presumption of access has been overcome.

In addition, the public must be given notice of a request to seal and a reasonable opportunity to challenge it. *In re Knight Publishing Co.*, 743 F.2d at 235. Here, BioMedomics's motion was filed on June 22, 2021. No opposition to the motion has been filed by any party or non-party despite a reasonable opportunity to do so.

Finally, the court is obligated to consider less drastic alternatives to sealing, and where a court decides to seal documents, it must "state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing in order to provide an adequate record for review." *Id.* Because, as described, the documents in question contain

confidential business information and are not generally available to the public, the court finds that alternatives to sealing do not exist at the present time.

Accordingly, BioMedomics's motion to seal [DE-47] is ALLOWED, and the document, [DE-46], shall remain under seal in accordance with Local Civil Rule 79.2.

So ordered, the _30_ day of August 2021.

Robert B. Jones, Jr.
United States Magistrate Judge